## FEDERAL TRADE COMMISSION *v.* TRAVELERS HEALTH ASSOCIATION.

No. 51.   Argued December 10, 1959.—Decided March 28, 1960.

*Charles H. Weston* argued the cause for petitioner. With him on the brief were *Acting Solicitor General Davis, Acting Assistant Attorney General Bicks, Daniel J. McCauley, Jr.* and *Alan B. Hobbes.*

*C. C. Fraizer* argued the cause and filed a brief for respondent.

*Clarence S. Beck,* Attorney General of Nebraska, filed a brief, as *amicus curiae,* urging affirmance.   The following States joined in this brief: Alabama, by *MacDonald Gallion,* Attorney General; Arkansas, by *Bruce Bennett,* Attorney General; California, by *Stanley Mosk,* Attorney General; Colorado, by *Duke W. Dunbar,* Attorney Gen-

eral; Florida, by *Richard W. Ervin,* Attorney General; Indiana, by *Edwin K. Steers,* Attorney General; Iowa, by *Norman A. Erbe,* Attorney General; Kansas, by *John Anderson, Jr.,* Attorney General; Kentucky, by *Jo M. Ferguson,* Attorney General; Louisiana, by *Jack P. F. Gremillion,* Attorney General; Maine, by *Frank A. Hancock,* Attorney General; Maryland, by *C. Ferdinand Sybert,* Attorney General; Massachusetts, by *Edward J. McCormack, Jr.,* Attorney General; Michigan, by *Paul L. Adams,* Attorney General; Nevada, by *Roger D. Foley,* Attorney General; New Hampshire, by *Louis C. Wyman,* Attorney General; New York, by *Louis J. Lefkowitz,* Attorney General; North Carolina, by *Malcolm B. Seawell,* Attorney General; North Dakota, by *Leslie Burgum,* Attorney General; Ohio, by *Mark McElroy,* Attorney General; South Carolina, by *Daniel R. McLeod,* Attorney General; South Dakota, by *Parnell J. Donohue,* Attorney General; Tennessee, by *George F. McCanless,* Attorney General; Texas, by *Will Wilson,* Attorney General; Utah, by *Walter L. Budge,* Attorney General; Vermont, by *Frederick M. Reed,* Attorney General; and Virginia, by *A. S. Harrison, Jr.,* Attorney General.

Briefs of *amici curiae* urging affirmance were also filed by *Grenville Beardsley,* Attorney General of Illinois; and by *Whitney North Seymour* for the Health Insurance Association of America et al.

MR. JUSTICE STEWART delivered the opinion of the Court.

Section 2 (b) of the McCarran-Ferguson Act provides that "[T]he Federal Trade Commission Act, . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State law." [1]  The State

---

[1] The here pertinent portions of the McCarran-Ferguson Act are as follows: "That the Congress hereby declares that the continued

in which the respondent is incorporated prohibits unfair or deceptive practices in the insurance business there or "in any other state." The question presented is whether the respondent's interstate mail order insurance business is thereby "regulated by State law" so as to insulate its practices in commerce from the regulative authority of the Federal Trade Commission.

The respondent, a Nebraska corporation, is engaged in the business of selling health insurance. Licensed only in the States of Nebraska and Virginia, the respondent sells no policies through agents, but from its office in Omaha transacts business by mail with residents of every State. It solicits business by mailing circular letters to prospective buyers recommended by existing policyholders. All business is carried on by direct mail from the Omaha office; it is from there that policies are issued, and there that premiums are paid and claims filed.

A Nebraska statute provides: "No person shall engage in this state in unfair methods of competition or in unfair or deceptive acts and practices in the conduct of the business of insurance. No person domiciled in or resident of

regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

"SEC. 2. (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, . . . the Sherman Act, . . . the Clayton Act, and . . . the Federal Trade Commission Act, . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State law. . . ." 59 Stat. 33, as amended, 61 Stat. 448.

this state shall engage in unfair methods of competition or in unfair or deceptive acts and practices in the conduct of the business of insurance in any other state, territory, possession, province, country, or district." [2]

The Court of Appeals set aside a cease-and-desist order of the Federal Trade Commission prohibiting the respondent from making certain statements and representations in its circular letters found by the Commission to be misleading and deceptive in violation of the Federal Trade Commission Act. 15 U. S. C. § 45. The court concluded that "[w]ith every activity of the [respondent], in the conduct of its business, subject to the supervision and control of the Director of Insurance of Nebraska, we think that the [respondent's] practices in the solicitation of insurance by mail in Nebraska or elsewhere reasonably and realistically cannot be held to be unregulated by State law." The court accordingly decided that the Commission was "without authority to regulate the practices of the [respondent] in soliciting insurance." 262 F. 2d 241, 244. Judge Vogel dissented, stating his belief that it was "impractical and ineffective" to "force the citizens of other states to rely upon Nebraska's regulation of the

---

[2] Section 44–1503 of Reissue Revised Statutes of Nebraska, 1943, as amended by the Emergency Act of May 14, 1957, Laws of Nebraska, 1957, c. 191, § 2. This provision is part of the Nebraska "Unfair Competition and Trade Practices" Act of 1947, as amended. (§§ 44–1501 to 44–1521, Reissue Revised Statutes of Nebraska, 1943, 1957 Cumulative Supplement, Laws of Nebraska, 1957, c. 191.) Other provisions of the Act empower the Director of Insurance (1) to prefer charges against any such insurer if he has reason to believe that it has, in Nebraska or elsewhere, engaged "in any unfair or deceptive act or practice in the conduct of such business," and to give the insurer notice of a hearing on the charges (§ 44–1506); (2) to take evidence at the hearing (§ 44–1507); and (3) to issue a cease-and-desist order if he determines that the insurer has engaged in the wrongful acts and practices with which it is charged (§ 44–1509).

long distance advertising practices of the [respondent] in the promotion and sale by mail or otherwise of insurance outside the State of Nebraska." It was his view that Nebraska's regulation of deceptive practices "in any other state" is not "the kind of regulation by state law Congress had in mind" in enacting the McCarran-Ferguson Act. 262 F. 2d 241, 245. Certiorari was granted, 359 U. S. 988, to resolve an important question left undecided in *Federal Trade Comm'n* v. *National Casualty Co.*, 357 U. S. 560.

In that case the issue involved the effect of state laws regulating the advertising practices of insurance companies which were licensed to do business within the States and which were engaged in advertising programs requiring distribution of material by local agents. In those circumstances the Court found there was "no question but that the States possess ample means to regulate this advertising within their respective boundaries." 357 U. S., at 564. It was held that § 2 (b) of the McCarran-Ferguson Act "withdrew from the Federal Trade Commission the authority to regulate respondents' advertising practices in those States which are regulating those practices under their own laws." 357 U. S., at 563. The Court expressed no view as to "the intent of Congress with regard to interstate insurance practices which the States cannot for constitutional reasons regulate effectively . . . ." 357 U. S., at 564.

The question here is thus quite different from that presented in *National Casualty*. In this case the state regulation relied on to displace the federal law is not the protective legislation of the States whose citizens are the targets of the advertising practices in question. Rather, we are asked to hold that the McCarran-Ferguson Act operates to oust the Commission of jurisdiction by reason of a single State's attempted regulation of its domicil-

iary's extraterritorial activities.[3]   But we cannot believe that this kind of law of a single State takes from the residents of every other State the protection of the Federal Trade Commission Act.[4]   In our opinion the state regula-

---

[3] This basic difference was effectively emphasized in Commissioner Gwynne's separate opinion concurring in the Commission's action in the present proceeding.  He pointed out that he had dissented from the Commission's assumption of jurisdiction in the *American Hospital* proceeding, where the "insurance company operated exclusively through agents in various states, in which it was duly licensed under the respective state laws," where "every such state had adopted the Model Code, or equivalent legislation," and where the "advertising practice complained of involved bundles of advertising matter mailed from the home office to the company's agents in the several states and disseminated there by such agents." 53 F. T. C. 548, 558–559.  (Commissioner Gwynne's view as to the Commission's lack of jurisdiction in the *American Hospital* proceeding was ultimately upheld here in *Federal Trade Comm'n v. National Casualty Co.*, 357 U. S. 560, which disposed of both the order against National Casualty Company and the order against American Hospital & Life Insurance Company.)   In the present case, by contrast, Commissioner Gwynne pointed out that the respondent was making representations to induce sales of insurance in States where it was not licensed and had no agents.   He concluded that "this type of law (that is, a law purporting to protect the people *of another state* from deceptive advertising) can hardly be said to be the type of law referred to in Section 2 (b) of the McCarran Act.   Section 2 (b) makes the Federal Trade Commission Act applicable to the business of insurance to the extent that such business is not regulated by state law.   I think this refers to the laws of the state whose citizens are being affected by the advertising and not to laws of some other state operating extraterritorially." 53 F. T. C. 548, 563.   Commissioner Gwynne, as a member of Congress, participated in the debates leading to the passage of the McCarran-Ferguson Act, 91 Cong. Rec. 1089, 1090.   See also 90 Cong. Rec. 6534–6536.

[4] The respondent has argued in this Court that the Federal Trade Commission lacked jurisdiction because the respondent's advertising practices are regulated not only by Nebraska, but also by "all other states" in which the respondent conducts its mail order business.   To this the petitioner replies that (1) the respondent did not raise

tion which Congress provided should operate to displace this federal law means regulation by the State in which the deception is practiced and has its impact.

The McCarran-Ferguson Act was passed in 1945. Its basic purpose was to allay doubts, thought to have been raised by this Court's decision of the previous year in *United States* v. *South-Eastern Underwriters Assn.*, 322 U. S. 533, as to the continuing power of the States to tax and regulate the business of insurance.[5] See *Prudential Insurance Co.* v. *Benjamin*, 328 U. S. 408, 429–433; *Maryland Casualty Co.* v. *Cushing*, 347 U. S. 409, 413; *Securities & Exchange Comm'n* v. *Variable Annuity Co.*, 359 U. S. 65, 99 (dissenting opinion). The original bills as passed by both the Senate and the House would have made the Federal Trade Commission Act completely inapplicable to the insurance business. S. 340, 79th

---

this argument before the Commission and, therefore, has waived it; (2) the statutes of the "other" States do not purport to apply to misrepresentations mailed to their residents by unlicensed, nonresident insurance companies having no local agents; and (3) even if these state statutes purported to be applicable to misrepresentations by such insurers, there still would not be regulation by state law within the meaning of the § 2 (b) proviso because the statutes could not be effectively enforced against the respondent. The Court of Appeals gave no consideration to the effect of "regulation" by any State other than Nebraska. In accord with accepted principles, we decline to consider these issues on the present record, leaving them "to be considered for what they are worth by the court below, if duly presented and relied upon . . . ." *Marconi Wireless Co.* v. *Simon*, 246 U. S. 46, 57. See *Tunstall* v. *Brotherhood*, 323 U. S. 210, 214; *United States* v. *Beach*, 324 U. S. 193, 196; *Federal Communications Comm'n* v. *WJR*, 337 U. S. 265, 285.

[5] While the appeal in *South-Eastern Underwriters* was pending here, there had been abortive attempts in the Seventy-eighth Congress to immunize the business of insurance from the federal antitrust laws. See H. R. 3270, S. 1362, 78th Cong., 1st Sess.; H. R. Rep. No. 873, 78th Cong., 1st Sess.; 89 Cong. Rec. 7686, 10532, 10659–10664.

Cong., 1st Sess., 91 Cong. Rec. 478–488, 1085, 1093–1094. During the debate in the House, however, several members objected to the provision exempting the business of insurance from this federal statute (91 Cong. Rec. 1027–1028, 1086, 1089, 1092–1093), and Representative Sumners, Chairman of the House Judiciary Committee, stated that in conference he would support an amendment which would make the Federal Trade Commission Act applicable to the same extent as the Sherman and Clayton Acts. 91 Cong. Rec. 1093. Thus it was that § 2 (b) in the form finally enacted first appeared as a recommendation of the Conference Committee of the two Houses. H. R. Conf. Rep. No. 213, 79th Cong., 1st Sess.

Since the House accepted the Conference Report without debate, 91 Cong. Rec. 1396, the only discussion of § 2 (b) in its present form occurred in the Senate. Yet, from that somewhat limited debate, as well as the earlier debate in both Houses as to the effect of the Sherman and Clayton Acts, it is clear that Congress viewed state regulation of insurance solely in terms of regulation by the law of the State where occurred the activity sought to be regulated. There was no indication of any thought that a State could regulate activities carried on beyond its own borders.

Thus the report on the original House bill stated: "It is not the intention of Congress in the enactment of this legislation to clothe the States with any power to regulate or tax the business of insurance beyond that which they had been held to possess prior to the decision of the United States Supreme Court in the *Southeastern Underwriters Association case.* Briefly, your committee is of the opinion that we should provide for the continued regulation and taxation of insurance by the States, subject always, however, to the limitations set out in the controlling decisions of the United States Supreme Court,

as, for instance, in *Allgeyer* v. *Louisiana* (165 U. S. 578), *St. Louis Cotton Compress Co.* v. *Arkansas* (260 U. S. 346), and *Connecticut General Insurance Co.* v. *Johnson* (303 U. S. 77), which hold, inter alia, that a State does not have power to tax contracts of insurance or reinsurance entered into outside its jurisdiction by individuals or corporations resident or domiciled therein covering risks within the State or to regulate such transactions in any way." (H. R. Rep. No. 143, 79th Cong., 1st Sess. 3.)

Significantly, when Senator McCarran presented to the Senate the bill agreed to in conference, he began by reading most of the foregoing quotation from the original House Report as part of his explanation of the bill. 91 Cong. Rec. 1442. The ensuing Senate debate centered around § 2 (b). The three Senate conferees, Senators McCarran, O'Mahoney, and Ferguson, repeatedly emphasized that the provision did not authorize state regulation of extraterritorial activities. See, *e. g.*, 91 Cong. Rec. 1481, 1483, 1484. Typical is the following statement by Senator O'Mahoney: "When the moratorium period passes, the Sherman Act, the Clayton Act, and the Federal Trade Commission Act come to life again in the field of interstate commerce, and in the field of interstate regulation. Nothing in the proposed law would authorize a State to try to regulate for other States, or authorize any private group or association to regulate in the field of interstate commerce." 91 Cong. Rec. 1483.

Not only this specific legislative history, but also a basic motivating policy behind the legislative movement that culminated in the enactment of the McCarran-Ferguson Act serve to confirm the conclusion that when Congress provided that the Federal Trade Commission Act would be displaced to the extent that the insurance business was "regulated" by state law, it referred only to regulation by the State where the business activities

have their operative force. One of the major arguments advanced by proponents of leaving regulation to the States was that the States were in close proximity to the people affected by the insurance business and, therefore, were in a better position to regulate that business than the Federal Government. See, *e. g.,* 91 Cong. Rec. 1087; 90 Cong. Rec. 6532. Joint Hearings before the Subcommittees of the Committees on the Judiciary on S. 1362, H. R. 3269, H. R. 3270, 78th Cong., 1st Sess. 17, 37, 117, 238–239, 242–243, 244, 252. Such a purpose would hardly be served by delegating to any one State sole legislative and administrative control of the practices of an insurance business affecting the residents of every other State in the Union. This Court has referred before to the "unwisdom, unfairness and injustice of permitting policyholders to seek redress only in some distant state where the insurer is incorporated." *Travelers Health Assn.* v. *Virginia,* 339 U. S. 643, 649.

Because of our view as to the meaning of § 2 (b) of the McCarran-Ferguson Act, we do not need to consider the constitutional questions that might arise as to the applicability of the Nebraska statute to misrepresentations made to residents of other States. Compare *Alaska Packers Assn.* v. *Industrial Accident Commission,* 294 U. S. 532; *Western Union Telegraph Co.* v. *Brown,* 234 U. S. 542; *Sligh* v. *Kirkwood,* 237 U. S. 52. Suffice it to note that the impediments, contingencies, and doubts which constitutional limitations might create as to Nebraska's power to regulate any given aspect of extraterritorial activity serve only to confirm the reading we have given to § 2 (b) of the Act.

It follows that the judgment of the Court of Appeals must be vacated, and the case remanded to that court for further proceedings consistent with the views expressed in this opinion.

*Vacated and remanded.*

Mr. Justice Harlan, whom Mr. Justice Frankfurter and Mr. Justice Whittaker join, dissenting.

This case marks the second time within a year that the Court has made inroads upon the policy of the McCarran-Ferguson Act by which Congress pervasively restored to the States the regulation of the business of insurance, a function which until this Court's decision in *United States v. South-Eastern Underwriters Association*, 322 U. S. 533, traditionally had been considered to be exclusively theirs. Last Term the Court held variable annuity policies, sold across state lines, subject to regulation by the Securities and Exchange Commission. See *Securities & Exchange Comm'n v. Variable Annuity Co.*, 359 U. S. 65, 93–101 (dissenting opinion). Today it holds that advertising materials mailed into other States by a health insurance company, already regulated under the laws of its own State with respect to the out-of-state transmission of such materials, are subject also to regulation by the Federal Trade Commission, at least to the extent that such advertising matter is unregulated by the laws of the State into which it is sent.

The Court's holding is based upon its conclusion "that when Congress provided [in § 2 (b) of the McCarran-Ferguson Act] that the Federal Trade Commission Act would be displaced to the extent that the insurance business was 'regulated' by state law, it referred only to regulation by the State where the business activities have their operative force." I think the data on which the Court relies is much too meagre to justify this conclusion, and believe, as the Court of Appeals did, that Nebraska's regulation of these activities of the respondent foreclosed Federal Trade Commission jurisdiction.

What is referred to in the majority opinion as "specific legislative history" on the issue before us seems to me to fall far short of being persuasive towards the Court's view

of the statute. The report on the original House bill, on which so much store is placed, was directed, as I read it, not to differentiating between the kinds of state insurance regulation which would, after the moratorium period provided in the statute had ended,[1] exempt from federal regulation and control the business of insurance in all but limited aspects,[2] but to the general proposition that the new statute would not enlarge or narrow state regulatory power as it had existed before this Court's decision in the *South-Eastern Underwriters* case, *supra*. That no more than this can be got out of the report on the original House bill is made manifest by Senator McCarran's explanation of the conference bill when he presented it to the Senate—an episode to which the Court refers. Quoting from the report, the Senator said: "That expression [meaning the report] should be made a part of this explanation. In other words, we give to the States no more powers than those they previously had, and we take none from them."[3]   91 Cong. Rec. 1442.

I believe that the fragments from the ensuing Senate debate, on which the Court further relies, indicate no

---

[1] In addition to § 2 (b) set forth in note 1 of the Court's opinion, *ante*, p. 295, § 3 (a) of the Act provides: "Until June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, and the Act of June 19, 1936, known as the Robinson-Patman Antidiscrimination Act, shall not apply to the business of insurance or to acts in the conduct thereof."

[2] Section 3 (b) of the Act provides: "Nothing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

[3] Senator McCarran's reading of the report on the original House bill stopped short of the last clause (following the citation of cases) quoted in the Court's opinion. *Ante*, p. 301.

more than does the report.[4] The same is true, in my opinion, of expressions made during the debate relating to the desirability of leaving insurance regulation to local authorities because they were, so to speak, on the ground, expressions which, the Court correctly observes, reflected "a basic motivating policy behind the legislative movement that culminated in the enactment of the McCarran-Ferguson Act." And since the Court very gingerly throws out possible constitutional questions, I think it appropriate to say that the right of Nebraska to police its own insurance company domiciliaries, with respect to their advertising sent from Nebraska into other States, is not seriously open to constitutional doubt. See *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322; *Sligh* v. *Kirkwood*, 237 U. S. 52. There is certainly nothing in *Alaska*

---

[4] It is worth observing that one of the hypothetical questions put to Senator Ferguson by Senator Pepper of Florida, an opponent of the bill, related to whether the bill would permit Florida, in disregard of the federal antitrust laws, to authorize the sale in Florida of insurance at rates fixed by an out-of-state insurance rating bureau, and that Senator Ferguson replied in the affirmative. 91 Cong. Rec. 1481. Yet the Court now finds it offensive to the concept of the statute to consider that other States may be content to rely on Nebraska's regulation of advertising material mailed to their citizens by Nebraska insurance companies. The Court reserves "for what they are worth" the questions that would arise were such other States to legislate against the out-of-state mailing of insurance advertising into their jurisdictions. Yet even if such legislation proved abortive as a practical matter, because of a foreign insurance company having no office, agents, or assets within the State so legislating, such legislation would nonetheless presumably exclude Federal Trade Commission jurisdiction, unless we were to depart from our holding in *Federal Trade Comm'n* v. *National Casualty Co.*, 357 U. S. 560, to the effect that it is the *existence* of state regulatory legislation, and not the *effectiveness* of such regulation, that is the controlling factor. The distinction between such a case as that, and the one before us, seems to me to be one without a difference.

*Packers Assn.* v. *Commission,* 294 U. S. 532, which points to the contrary.

The temptation is strong, no doubt, to ask the Court to innovate with respect to the McCarran-Ferguson Act when state regulation may be thought to have fallen short. Two years ago we declined to do so when invited by the Federal Trade Commission in the *National Casualty* case, *supra,* at 564–565. I think it unwise for us now to yield to this encore on the part of the Commission. One innovation with the Act is apt to lead to another, and may ultimately result in a hybrid scheme of insurance regulation, bringing about uncertainties and possible duplications which should be avoided.

"Obviously Congress' purpose was broadly to give support to the existing and future state systems for regulating and taxing the business of insurance. This was done in two ways. One was by removing obstructions which might be thought to flow from its own power, whether dormant or exercised, except as otherwise expressly provided in the Act itself or in future legislation. The other was by declaring expressly and affirmatively that continued state regulation and taxation of this business is in the public interest and that the business and all who engage in it 'shall be subject to' the laws of the several states in these respects.

"Moreover, in taking this action Congress must have had full knowledge of the nation-wide existence of state systems of regulation and taxation; of the fact that they differ greatly in the scope and character of the regulations imposed and of the taxes exacted; and of the further fact that many, if not all, include features which, to some extent, have not been applied generally to other interstate business. Congress could not have been unacquainted with

these facts and its purpose was evidently to throw the whole weight of its power behind the state systems, notwithstanding these variations." *Prudential Ins. Co.* v. *Benjamin,* 328 U. S. 408, 429–430.

See also *Wilburn Boat Co.* v. *Fireman's Ins. Co.,* 348 U. S. 310, 318–321; *Securities & Exchange Comm'n* v. *Variable Annuity Co., supra,* at 68–69, and dissenting opinion at 93 *et seq.*

If innovations in the policy of the McCarran-Ferguson Act are thought desirable, they should be made by Congress, not by us.

I would affirm.