**TRAVELERS HEALTH ASSOCIATION, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 15743.**

United States Court of Appeals
Eighth Circuit.
Jan. 24, 1962.

---

Federal Trade Commission's findings as to deceptiveness and unfairness of advertising material of an insurer were not clearly erroneous. McCarran-Ferguson Insurance Regulation Act, § 2 (b) as amended 15 U.S.C.A. § 1012(b).

———◆———

C. C. Fraizer, Lincoln, Neb., for petitioner, and T. J. Fraizer, Fraizer & Fraizer, Lincoln, Neb., were with him on the brief.

J. B. Truly, Atty., F. T. C., Washington, D. C., for respondent after remand by the Supreme Court. Daniel J. McCauley, Jr., Gen. Counsel, F. T. C., Washington, D. C., and Alan B. Hobbes, Asst. Gen. Counsel, F. T. C., Washington, D. C., were with him on the brief.

Whitney North Seymour, Albert X. Bader, Jr., of Simpson, Thacher & Bartlett, New York City, filed brief as amicus curiae Health Ins. Ass'n of America.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

JOHNSEN, Chief Judge.

This case is before us on remand from the Supreme Court, 362 U.S. 293, 80 S. Ct. 717, 4 L.Ed.2d 724, after a vacating of our decision, 262 F.2d 241.

We had held, by a majority of the division sitting, with Judge Vogel dissenting, that the authority and respon-

sibility imposed by the statutes of Nebraska on the Director of Insurance of that State, to prevent Nebraska-incorporated insurance companies from engaging in unfair or deceptive acts and practices "in any other state", constituted such regulation or provision for control of the interstate advertising of Travelers Health Association, a Nebraska mail-order insurance company, as to deprive the Federal Trade Commission of jurisdiction over such advertising in all of the states.

The McCarran-Ferguson Act allows the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. to have application in the interstate field of insurance "to the extent that such business is not regulated by State law". 15 U.S.C.A. § 1012(b).

Beyond the question of the legal adequacy of such a domiciliary control to make the situation "regulated" within the McCarran-Ferguson Act, we felt that this regulatory means was also not without a practical efficacy, in that it seemed reasonable to presume that, if Travelers Health Association sent improper soliciting material into a state where it was not licensed, the insurance department of such state would bring the matter to the attention of the Nebraska Director and he would take appropriate steps to deal with the situation in accordance with his official responsibility.

Such complementary actions in the matter impressed as representing an administrative reality in the organizational association and natural liaison which have come to exist among the insurance commissioners of the states.

One factor in this official tie has been, of course, the common sensitivity of these state officers against federal regulation in the insurance field. Another element has been the common nature of their supervisory problems in the general uniformity of much state insurance regulation. In the immediate area here involved, there is the particular inducement for such liaison that every state apparently now has a statute imposing corresponding authority and responsibil-

ity upon its insurance commissioner to prevent its own domiciliary companies from engaging in deceptive acts and practices in other states. Cooperative action in the situation, as suggested above, thus would constitute a matter of direct mutual interest among all these officials, as a facilitation to each in performing his own domiciliary responsibility.

But however effective legally and practically these domiciliary statutes might accordingly be, the opinion of the Supreme Court has made it clear that this means of curbing deceptive acts and practices by an insurance company in other states does not constitute the type of control to which the McCarran-Ferguson Act requires the Federal Trade Commission Act to yield.

The Court's opinion states that "the state regulation which Congress provided should operate to displace this federal law means regulation by the State in which the deception is practiced and has its impact"; that "(t)here was no indication of any thought that a State could regulate activities carried on beyond its own borders"; and that, "when Congress provided that the Federal Trade Commission Act would be displaced to the extent that the insurance business was 'regulated' by state law, it referred only to regulation by the State where the business activities have their operative force". 362 U.S. at p. 298, 299, 300, 301, 302; 80 S.Ct. at p. 720, 721, 722.

■ Thus, the Federal Trade Commission Act must be recognized as having application to any sending of improper advertising material by Travelers Health Association into other states for soliciting purposes, except in the case of such states as have "regulated" the situation—that is, have adopted legislative provisions which are in legal concept sufficient in their form and in their enforceability to be capable of controlling the mailing of deceptive or other unfair soliciting material by the Association into the state.

In addition to its contention as to the adequacy of the Nebraska regulatory

statute to satisfy the McCarran-Ferguson Act generally, Travelers Health Association had urged, when the case was previously before us, that in fact there did exist in each of the other states legislative provision for local control, and with means for effective enforcement thereof, over any improper advertising material sent by it into such state. In view of the disposition which we then made, we did not reach this contention, and the case has been remanded to us by the Supreme Court for a consideration of the question.

In its opinion in Federal Trade Commission v. National Casualty Co., 357 U.S. 560, 564, 78 S.Ct. 1260, 1262, 2 L.Ed. 2d 1540, the Supreme Court noted that, at the time of that decision (1958), most of the states had enacted the "Model Unfair Trade Practices Bill for Insurance". It characterized this act as being "prohibitory legislation which proscribes unfair insurance advertising and authorizes enforcement through a scheme of administrative supervision". Ibid. And it declared that, on the provisions of the act, with the capacity for enforcement which existed in that case from the insurance company being licensed, maintaining local agents and having the distribution of its advertising material made through these agents in each of the states involved, "there is no question but that the States ·[under these circumstances] possess ample means to regulate this advertising within their respective boundaries". Ibid.

The act (commonly referred to in the insurance field as the Model Fair Trade Practices Act) has since had enactment in additional states. At the present time, it or a corresponding statute, with local variation not at this point of significance, is in effect in all of the fifty states. If these enactments can be said to be subject to such powers of enforcement, through the state's own instrumentalities and processes, as in legal concept to give local control over the advertising used by Travelers Health Association, then the Federal Trade Commission Act is without application to the situation in any of the states.

As, however, our previous opinion noted, 262 F.2d at p. 243, Travelers Health Association is not licensed to solicit or write insurance in any state except Nebraska and Virginia. Nor does it have representatives of any nature otherwise within those forty-eight states. Thus, such states are able to engage in enforcement of their regulatory provisions only by means of reach against the Association outside their own borders.

The crucial question here therefore is whether on this basis these states are able to exercise such fullness of compulsion against the Association as legally to provide them with local control.

■ In our previous opinion, we mistakenly thought it sufficient as to all the fifty states that the sending of deceptive material by the Association into any state was regulated or made subject to control through the provisions, instrumentalities and processes of Nebraska law. On the opinions of the Supreme Court in the present case and in the National Casualty case, however, it is, we think, apparent that, under the McCarran-Ferguson Act, the situation cannot be regarded as "regulated by State law", except in terms of each state's sovereignty and of its having on this basis legislative provision possessing the character of regulation and capable of being enforced through the exercise of its own powers.

■ To the extent, therefore, that a state, for control of the acts of Travelers Health Association to be effected as to it, must depend on any provisions, instrumentalities or processes of another state, we believe that its situation cannot, within the McCarran-Ferguson Act, be held to be "regulated by State law". The state must itself be legally able to do, through its own provisions, instrumentalities and processes, everything that is necessary to the effecting of control as to its situation.

Under the Model Fair Trade Practices Act, the head of a state insurance depart-

ment is authorized to make and serve on any insurance company a statement of charges as to any unfair or deceptive acts and practices committed by it in the state; to hold a hearing thereon after giving reasonable notice; and, after hearing, upon proper findings, to issue and serve an appropriate cease and desist order in the public interest. The exercising of this administrative jurisdiction is permitted to be made on the basis of notice to the company by registered mail. The act contains a provision for forfeiture to the state, recoverable in a civil action, of up to $500 in amount for each violation of such a cease and desist order. It is further provided that the head of the insurance department may, if the cease and desist order is not obeyed, cause suit to be instituted through the attorney general of the state for a court injunction. (A company is given the right to have any cease and desist order judicially reviewed by a timely proceeding.)

On the holding in Travelers Health Association v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, there can be no question, so far as due process is concerned, that a state is able, through notice given by registered mail, as provided for in the Model Act, to subject Travelers Health Association to the jurisdiction of the state's insurance commissioner for purposes of an administrative cease and desist proceeding, as referred to above. The Association admits that the extent of its insurance writing and the incidents of relationship therefrom are as to every state within the minimal-contacts scope of the Virginia case, and the Commission raises no question as to this being the fact.

Further, on the liberalization made by McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, as to subjecting an insurance company to the judicial jurisdiction of a state, we shall assume for purposes of the situation here that the states similarly are able to obtain jurisdiction over Travelers Health Association for purposes of an injunction suit in their courts, and probably also (but without deciding) in an action making assertion of and seeking a judgment for the forfeitures or penalties provided by the act.

■ But supposing all this to have been engaged in and accomplished, unless the state is able to subject the Association to legal processes beyond that point, there would not exist the ultimate compulsiveness which could be necessary to enable the state to achieve control. Processive means for exerting pressure against person or through property to effectuate orders, decrees and judgments which have been rendered are inherently a part of the legal concept of control. If they do not exist, or if they are not capable of being given exercise and application so that the element of legal compulsion can be provided by them, there is not conceptually present such power on the part of a state to effect control as to entitle it to be declared that the Association's situation in the state is "regulated by State law".

In the National Casualty case, the states involved were in a position to use such follow-up processes against the Company within the state for the effectuation of its orders, decrees and judgments that the Supreme Court felt warranted in conceptually declaring that "there is no question but that the States possess ample means to regulate this advertising within their respective boundaries". 357 U.S. at p. 564, 78 S.Ct. at p. 1262. The Company's license to do business, its agency structure, its accounts and balances from this representation, and the fact that the agents themselves were the persons who were making distribution of the advertising material in the state manifestly afforded the state means of local reach and pressure such as ordinarily would be sufficient to effectuate its orders, decrees and judgments in order to be able to accomplish control.

■ But here, in forty-eight of the states, Travelers Health Association is without any license, agency relationships, commercial accounts, or other direct presence of person or property, upon

which the state can auxiliarly lay hands in enforcement compulsion. If its orders, decrees and judgments are to be enforceable, the state must seek the aid of the statutes, instrumentalities and processes of another state. In its need to rely upon such outside means for effecting compulsion, we think it must be held, as suggested above, that the state cannot conceptually in the situation be declared to "possess ample means to regulate this advertising" on the basis of its own law.

In reaching this conclusion—which we confess we do with some regret—it becomes unnecessary to consider whether the state could in fact require another state to allow the use of its instrumentalities and processes to effectuate an injunction decree or penalty-forfeiture judgment against Travelers Health Association under the Model Fair Trade Practices Act. The old artificial notion that decrees or judgments involving penalties of any form were entirely outside the full faith and credit clause is, of course, no longer the law. See Milwaukee County v. M. E. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220; Kenney v. Supreme Lodge, L.O.M., 252 U.S. 411, 40 S.Ct. 371, 64 L.Ed. 638; Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039; Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239. But it cannot be said, we think, that the decisions of the Supreme Court have yet wiped out every possible vestige of that concept. To what extent any vestige may remain, and whether such decrees and judgments as might be involved in the present situation could be within that remainder, we shall, however, as previously indicated, not here pause to consider.

To summarize—our holding here rests on the basis that, for forty-eight of the states to be able to exercise ultimate legal compulsion against Travelers Health Association in attempted regulation, they must resort to the statutes, instrumentalities and processes of another state (Nebraska) for effectuation of their orders, decrees and judgments;

they must convert those decrees and judgments into decrees and judgments of such other state; and they further must invoke that state's auxiliary processes for effectuation of such decrees and judgments, in the status of products of the courts of that state and not of their own. Thus, we do not believe it is possible to say that as to these states the Association's advertising is "regulated by State law", within the concept which it seems to us that term implies, of being able to control by local power and means.

Travelers Health Association suggests that it would be possible for these states to engage in effectuation within their borders through garnishment of its policy holders in the state. But the state has no means of compelling the Association to furnish it with a list of such policy holders. Beyond this, since the policies do not provide any life insurance coverage but merely sickness benefits for not exceeding a 104-weeks period, and with a right in the Association to cancel the coverage at any time, it does not seem likely that garnishment of policy holders would enable the state to lay its hands on any funds. And in view of the small individual premiums involved in the Association's policies, this method could hardly realistically be viewed as providing any real regulatory power. In any event, it would not be able to control the Association's use of advertising material to engage in single-shot premium efforts.

The Association has made the further contentions here (1) that the Commission was estopped to assert that its advertising material was deceptive and misleading, and (2) that the Commission's findings as to deceptiveness and unfairness are in any event clearly erroneous. The first of these is predicated upon circumstances and bases similar to those involved and answered by our holding in American Life & Acc. Ins. Co. v. Federal Trade Commission, 8 Cir., 255 F.2d 289. As to the second contention, it is sufficient to say that the Commission's findings cannot on the evidence

and in relation to the soliciting situation involved be held to be without rational and substantial basis.

In view of the disposition being made, we need not discuss the local variations which have occurred in some of the enactments of the Model Act. These variations are without significance for purposes of the general question on which our result has been predicated. The observation might illustratively be made, however, that it is questionable whether under some of them at least there is any authorization of registered mail process as a basis for a court injunction. For the provisions of the Model Act in general, reference may be made to Rev.Stat. of Nebr.1943 (Reissue of 1960), Vol. 3A, Art. 15.

The Commission's cease and desist order is affirmed, except that it is not entitled to application as to the States of Nebraska and Virginia. A decree of enforcement will be entered accordingly.