**ROYAL STANDARD INSURANCE COMPANY, Appellant,**

v.

**Robert S. McNAMARA, Secretary of Defense, United States of America, Appellee.**

**No. 17751.**

United States Court of Appeals
Eighth Circuit.

April 22, 1965.

Charles W. Stubbs of Stubbs, Maynard & Nixon, Oklahoma City, Okl., Welcome D. Pierson, Oklahoma City, Okl., James O. Garner, Fort Smith, Ark., John G.

Holland, Fort Smith, Ark., and Lawrence S. Rosenstrauch, Columbus, Ga., for appellant.

Martin Jacobs, Attorney, Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Morton Hollander, Attorney, Dept. of Justice, Washington, D. C., and Charles M. Conway, U. S. Atty., Fort Smith, Ark., for appellee.

Before VOGEL, RIDGE and MEHAFFY, Circuit Judges.

VOGEL, Circuit Judge.

Royal Standard Insurance Company, appellant herein, instituted this action to obtain a preliminary and permanent injunction restraining the Secretary of Defense, appellee, from placing into effect and enforcing a Department of Defense directive. The directive upon which attack is made was issued April 15, 1964, to become effective July 1, 1964.[1]

The purpose of the directive at issue was to establish "uniform requirements" (1) "for motor vehicle liability insurance coverage for all military and civilian personnel extended driving and parking privileges on military installations within the United States" and (2) "for the accreditation of insurers for the solicitation and sale on military installations of motor vehicle liability insurance".

With respect to its first purpose, the regulations contained in the directive provide that "to secure and retain driving and parking privileges on military installations, all military and civilian personnel must possess motor vehicle liability insurance which meets the requirements" of the regulations. A motor vehicle liability insurance policy meets the requirments if it: (1) Complies with all statutory and regulatory requirements of the state in which the installation is located and has policy amounts not lower than the minimum limits prescribed in the financial responsibility or compulsory insurance law of that state; (2) states

clearly the name and full address of the insurer; (3) *provides bodily injury and property damage liability coverage for all drivers authorized by the named insured to drive the vehicle,* "military endorsements excluding persons other than the named insured whether in the military or not are not acceptable"; and (4) *does not contain* unusual limitations or restrictions including, but not limited to (a) territorial limitations, except that if the installation is located within the United States, the standard limitation limiting coverage to the United States and Canada is acceptable; and (b) *coverage limitations which exclude liability for bodily injury to passengers and guests if such liability exists as a matter of law.*

There are other provisions as well as numerous exceptions to the directive's requirements, both for defense personnel and insurers, which we find of insufficient pertinence to detail here.

On May 30, 1964, the appellant filed its complaint, alleging that it is an Arkansas corporation engaged in the business of writing automobile liability insurance for military personnel; that the Secretary of Defense lacked authority to issue the April 15, 1964, directive and that if such directive is put into effect it, the appellant, will have to cease doing business. Appellant requested that the Secretary be permanently enjoined from carrying out and enforcing the directive. Appellant also sought a "temporary injunction" restraining enforcement of the directive and requiring the Secretary to issue a new directive canceling the old.

In response to an order to show cause why a preliminary injunction should not be granted, the Secretary of Defense moved for dismissal of the complaint and denial of a preliminary injunction on the following grounds, among others, that (1) appellant lacked standing to sue, (2) appellant had not exhausted its administrative remedies, (3) the action is an

---

[1]. Appellant also sought to enjoin the enforcement of a directive issued on January 19, 1961. That directive is no longer in force and was superseded by the one adopted April 15, 1964.

unconsented suit, (4) the appellant's pleadings fail to show acts constituting irreparable injury, and (5) the Secretary acted within his authority in promulgating the regulations complained of and they are reasonable regulations. On June 10, 1964, the District Court denied the appellant's request for a preliminary injunction and the case proceeded to trial.

Testimony of appellant's witnesses may be briefly summarized as follows: The appellant has 27 employees. The major share of its business (79%) comes from insuring military personnel who are under 25 years of age. Servicemen in that age group are generally undesirable insurance risks and can usually get insurance coverage only through an "assigned risk pool or plan" at a rate considerably higher than that charged by the appellant. *All of the appellant's insurance policies for servicemen have the essentials of a restrictive endorsement known as a "military restriction" which provides that when the insured automobile is driven off a military installation, only the named insured and the members of his family are covered.* A major shareholder of the appellant and its general manager expressed the opinion that, "It is not humanly possible" for the appellant to comply with the 1964 directive's requirements.

Testimony for the Secretary indicated that the directive was promulgated, after consultation with the National Association of State Insurance Commissioners, the insurance industry generally, and the military departments, as a result of the Defense Department's files containing numerous cases of unsatisfied claims and judgments against servicemen who thought they had adequate insurance. The problem resulted from insurance companies issuing endorsements limiting their liability and of companies being unsound financially, leaving the military man with either inadequate insurance or none at all. The policy reasons for adopting the state licensing provisions for insurance companies desiring on-base solicitation privileges were stated to be the lack of expertise on the part of the Defense Department in evaluating insurance companies and the fact that it was felt that military personnel residing within a state were entitled to the equal protection of state insurance laws co-extensive with citizens of that state. A factor taken into consideration was that when a company is accorded on-base solicitation privileges it carries—at least to some buyers—the tacit approval of the Department of Defense that the insurance it sells is satisfactory.

At the conclusion of the trial, June 26, 1964, the trial court held: That the court has jurisdiction of the parties and that the Secretary of Defense has authority to issue directives for the use of facilities of the Department of Defense pertaining to the use of such facilities for driving and parking and also for solicitation of insurance; that neither directive is contrary to the McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011–1015, and that the directive of the Secretary of Defense did not abridge the right to contract of third parties; that the exercise of powers authorized in Article I, Section 8, of the Constitution of the United States delegated by Congress to the Secretary of Defense does not violate the Ninth or Tenth Amendments of said Constitution, and that the regulations contained in the directive of the Secretary of Defense are neither arbitrary nor capricious; that the courts will not review managerial acts, not clearly arbitrary, of executive officials performed within the scope of their authority and will not substitute their judgment in such matters for that of the officials; that the directive of the Secretary of Defense was within his discretion and the court is without jurisdiction to review his actions. The court thereupon entered judgment dismissing appellant's complaint. Subsequently appellant applied to this court for a stay pending disposition of this appeal. After oral argument, appellant's application therefor was denied on July 28, 1964.

We think the District Court was entirely correct in granting judgment of

dismissal against the appellant herein. The directive had for its purpose the establishment of uniform requirements as to automobile liability insurance for military and civilian personnel who were granted driving and parking privileges on military installations within the United States and for the accreditation of insurers for the solicitation and sale on military installations of motor vehicle liability insurance. No attempt was made by the directive to regulate insurance written elsewhere or used elsewhere. It did nothing more or less than to provide that those who wished to drive or park on military establishments or to solicit insurance there had to abide by the conditions set forth.

5 U.S.C.A. § 22 provides as follows:

" *§ 22. Departmental regulations.* The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

As to the Secretary of Defense, Congress has specifically provided, 10 U.S.C.A. § 133:

*"Secretary of Defense: appointment; powers and duties; delegation by*

"(a) There is a Secretary of Defense, who is the head of the Department of Defense, appointed from civilian life by the President, by and with the advice and consent of the Senate. * * *

"(b) The Secretary is the principal assistant to the President in all matters relating to the Department of Defense. Subject to the direction of the President and to this title and section 401 of title 50, he has authority, direction, and control over the Department of Defense."

With the foregoing sections as a base, the Secretary of Defense has promulgated the directive in question. We think he had a perfect right to do so. 10 U.S.C.A. § 133(b), supra, gives him the "authority, direction, and control over the Department of Defense". 5 U.S.C.A. § 22 gives the Secretary, as the head of a department, the power to prescribe regulations, not inconsistent with law, for the government of his department. In Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 1961, 367 U.S. 886, 890, 81 S.Ct. 1743, 1746, 6 L.Ed.2d 1230, the Supreme Court said:

" * * * *The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President.* Article I, § 8, of the Constitution gives Congress the power to 'provide and maintain a navy;' to 'make rules for the government and regulation of the land and naval forces;' to 'exercise exclusive legislation * * over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings;' and to 'make all laws which shall be necessary and proper for carrying into execution the foregoing powers * * *.' Broad power in this same area is also vested in the President by Article II, § 2, which makes him the Commander in Chief of the Armed Forces." (Emphasis supplied.)

"Congress has provided that the Secretary of the Navy 'shall administer the Department of the Navy' and shall have 'custody and charge of all * * * property of the Department.' 10 U.S.C. § 5031(a) and (c). In administering his Department, the Secretary has been given statutory power to 'prescribe regulations, not inconsistent with law, for the government of his department, * * * and the custody, use, and preservation of the * * * property appertaining to it.' 5 U.S.C. § 22."

And at page 893 of 367 U.S., 81 S.Ct. at page 1747:

"This power [to remove persons from military installations] has been expressly recognized many times. 'The power of a military commandant over a reservation is necessarily extensive and practically exclusive, forbidding entrance and controlling residence as the public interest may demand.' 26 Op.Atty.Gen. 91, 92. '[I]t is well settled that a post commander can, in his discretion, exclude all persons other than those belonging to his post from post and reservation grounds.' JAGA 1904/16272, 6 May 1904. *'It is well settled that a Post Commander can, under the authority conferred on him by statutes and regulations, in his discretion, exclude private persons and property therefrom, or admit them under such restrictions as he may prescribe in the interest of good order and military discipline* (1918 Dig.Op.J.A.G. 267 and cases cited).' JAGA 1925/680.44, 6 October 1925." (Emphasis supplied.)

By the challenged directive the Secretary of Defense has exercised his authority to designate who shall be allowed to park and to drive on military reservations and who shall be allowed to solicit automobile liability insurance on reservations. To obtain these rights and privileges, the provisions of the directive must be complied with. This is nothing more than an internal affair of the Department of Defense. As was said by this court in Duba v. Schuetzle, 8 Cir., 1962, 303 F.2d 570, 576:

"The courts have refused to interfere with ordinary ministerial and discretionary decisions and conduct peculiarly within the internal workings of an executive department."

See, also, Perkins v. Lukens Steel Co., 1940, 310 U.S 113, 131–132, 60 S.Ct. 869, 84 L.Ed. 1108; Massachusetts v. Mellon, 1923, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078.

While recognizing the express statutory authority given to the Secretary of Defense by 5 U.S.C.A. § 22 and 10 U.S.C.A. § 133(b), the appellant nevertheless maintains that the Secretary lacked the authority to attach conditions to the privileges given defense and civilian personnel of driving and parking their automobiles on government-owned military installations and the power to specify conditions precedent to the exercise of the privilege of soliciting automobile liability insurance on military establishments. Appellant argues that such provisions run contrary to the McCarran-Ferguson Act. That Act, 59 Stat. 33, as amended, 15 U.S.C.A. §§ 1011–1014, provides, insofar as it may possibly be pertinent to the issue herein, as follows:

"§ *1011. Declaration of policy*

"Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

" § *1012. Regulation by State law; Federal law relating specifically to insurance; applicability of certain Federal laws after June 30, 1948*

"(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the

Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law." .

Congressional intent in passing the Mc-Carran-Ferguson Act was stated by the Supreme Court in F. T. C. v. Travelers Health Ass'n, 1960, 362 U.S. 293, 299, 80 S.Ct. 717, 721, 4 L.Ed.2d 724:

> "The McCarran-Ferguson Act was passed in 1945. Its basic purpose was to allay doubts, thought to have been raised by this Court's decision of the previous year in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, [64 S.Ct. 1162, 88 L.Ed. 1440], as to the continuing power of the States to tax and regulate the business of insurance. See Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 429–433 [66 S.Ct. 1142, 90 L.Ed. 1342]; Maryland Casualty Co. v. Cushing, 347 U.S. 409, 413 [74 S.Ct. 608, 98 L.Ed. 806]; Securities & Exchange Comm. v. Variable Annuity Life Ins. Co., 359 U.S. 65, 99 [79 S.Ct. 618, 3 L.Ed.2d 640] (dissenting opinion)."

The Act does not confer any right upon insurance companies, including the appellant. It is merely a direction to the courts not to construe, with certain specified exceptions, any statute enacted by Congress as invalidating, impairing or superseding any state law regulating the business of insurance or imposing a tax or fee on such business. Congress by the McCarran-Ferguson Act created no statutory rights which could possibly provide a basis for the instant suit on the part of the appellant herein.

The Administrative Procedure Act, 5 U.S.C.A. § 1009, precludes from judicial review "agency action [which] is by law committed to agency discretion". We think that by 5 U.S.C.A. § 22, supra, and 10 U.S.C.A. § 133, supra, Congress clearly committed to the discretion of the Secretary of Defense the right to determine, by directives, the conditions upon which vehicles may be parked or driven on military installations and to determine the conditions upon which anyone should be allowed to solicit automobile liability insurance on military installations. This constituted a commitment to "agency discretion". See Panama Canal Co. v. Grace Line, Inc., 1958, 356 U.S. 309, 317, 78 S.Ct. 752, 2 L.Ed.2d 788. Additionally, we are quite in accord with the District Court's finding that the directive here was neither " * * * arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;" 5 U.S.C.A. § 1009(e).

The judgment of dismissal is affirmed.