**MODERN LIFE & ACCIDENT INSUR-
ANCE COMPANY, Petitioner-
Appellant,**

v.

**COMMISSIONER OF INTERNAL REVE-
NUE, Respondent-Appellee.**

United States Court of Appeals
Seventh Circuit.

Dec. 5, 1969.

Rehearing Denied Jan. 14, 1970.

Harry S. Tressel, Carl Schulz, Chicago, Ill., for appellant.

Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Gilbert E. Andrews, Atty., U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before CASTLE, Chief Judge, DUFFY, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

Taxpayer had for a number of years reported and computed its income tax as

if it were a life insurance company as defined in 26 U.S.C. § 801, and therefore subject to the tax imposed by § 802. In 1965, the commissioner decided that taxpayer was not a life insurance company under § 801, but a mutual insurance company taxable under § 821. He determined deficiencies for 1959, '60, '61, and '62 by computing the tax under the latter section.

In a proceeding before the tax court, taxpayer conceded it was not taxable as a life insurance company, but contended that it was an "insurance company (other than a life or mutual insurance company)" and therefore taxable under § 831.

The tax court decided, as had the commissioner, that taxpayer was a "mutual insurance company (other than a life insurance company and other than a fire, flood, or marine insurance company subject to the tax imposed by section 831)" and therefore taxable under § 821.[1]

Taxpayer is an Illinois insurance company. It was organized in 1923 under an 1893 "Act to incorporate companies to do the business of life or accident insurance on the assessment plan". The 1893 act was repealed in 1937 and since that date taxpayer has been governed by Article XXI of the Illinois Insurance Code, entitled "Assessment Accident and Assessment Accident and Health Companies".[2] Taxpayer provides a funeral benefit of $100 in event of death of any member. This is the only life insurance it provides. At the close of 1962, funeral benefits in force were $1,347,100, and the total of all risk was $28,955,725.

Article III of the Illinois Insurance Code is entitled "Domestic Mutual Companies".[3] Taxpayer's principal argument, as we understand it, is that since the Illinois law has provisions for assessment companies like taxpayer which are distinct from the provisions for mutual companies, it must be said that Illinois treats taxpayer as an insurance company other than a mutual, and it must follow that taxpayer is an insurance company other than a mutual for the purpose of the federal internal revenue code. If the latter be true, taxpayer would be taxable under 26 U.S.C. § 831.

Taxpayer's argument that the classification made by the law of the state of incorporation controls the classification under the internal revenue code is based on the declaration by Congress in the McCarran-Ferguson Act [4] "that the continued regulation and taxation by the several states of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."

We are unable to agree that the McCarran-Ferguson Act has the effect on the internal revenue code contended for by taxpayer. The Supreme Court has said of the former act, "Its basic purpose was to allay doubts, thought to have been raised by this Court's decision of the previous year in United States v. South-Eastern Underwriters Asso., 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, as to the continuing power of the States to tax and regulate the business of insurance." [5] Taxpayer has not shown that its being classified as a mutual under the internal revenue code will interfere with the choice made by Illinois to place it in a class distinct from other mutuals for the purpose of regulation.

It is well established that Congress intended that the revenue laws, in the absence of language evidencing a different purpose, are to be interpreted so as to give a uniform application to a nation-

---

1. 49 T.C. 670.

2. 73 S.H.A. ch. 73, §§ 983–989.

3. 73 S.H.A. §§ 648–672. District, county, and township mutual insurance companies are dealt with in 73 S.H.A. §§ 204.1–204.25.

4. 15 U.S.C. § 1011 and § 1012.

5. Federal Trade Comm. v. Travelers Health Asso. (1960), 362 U.S. 293, 299, 80 S.Ct. 717, 721, 4 L.Ed.2d 724.

wide scheme of taxation. "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law."[6] The McCarran-Ferguson Act makes no express reference to the internal revenue laws, nor are we able to discern the implication for which taxpayer contends.

The tax court noted that neither the internal revenue code nor regulations define the term, mutual insurance company. It concluded that mutual insurance companies have the following characteristics: Common equitable ownership of assets by members; the right of policyholders to be members to the exclusion of others, and to choose management; the sole business purpose of supplying insurance at cost; and the right of members to the return of premiums which are in excess of the amount needed to cover losses and expenses. The tax court further concluded that taxpayer has these characteristics and is a mutual.

Except for insisting that a company is not a mutual under the internal revenue code unless it is labeled a mutual by the law of its state, taxpayer has not challenged the proposition that when insurance companies are broadly classified, companies with these four characteristics are deemed mutuals.

The earliest mutual insurance companies were of the assessment type and at first it was thought that all mutual companies had to operate upon the assessment principle.[7]

According to the certificate of association of taxpayer, its by-laws, and the statute under which it operates, its policyholders are its members, the members elect the directors, and the board of directors fixes the amount of the premiums and assessments. The tax court's conclusion that the members have common equitable ownership of the as-

sets has not been challenged. Thus it is readily seen that taxpayer has the first two characteristics of a mutual above mentioned.

The tax court decided that the announced purpose of taxpayer is to furnish insurance at cost and that insurance has been so furnished. The certificate of association states that taxpayer will "do the business of accident insurance on the assessment plan" and that the plan is "To create a fund for the payment of the above benefits by the payments of premiums and additional assessments if the same are necessary." The by-laws empower the board to change the amount of the premiums from time to time "as the experience of the Company may require" and "to vote for an additional assessment whenever it may be necessary."

The tax court decided that taxpayer had not accumulated a surplus sufficient to militate against the proposition that insurance is being furnished at cost. Taxpayer has outstanding $115,000 of interest bearing guarantee fund certificates. Taxpayer's annual reports indicate that after provision for these, taxpayer had a deficit at the end of 1958, and an unassigned surplus ranging from $25,000 to $113,000 at the ends of the years under consideration. Taxpayer does not seem to disagree with the tax court on the point that it has not developed a significant surplus, for it construes the reports differently and contends that these sums "could not under any circumstances be considered as surplus, unassigned or otherwise, but actually represented outstanding and unpaid fixed obligations."

With respect to the fourth characteristic, the right of the members to the return of premiums in excess of the amount needed to cover losses and expenses, taxpayer points out that its policies, by-laws, and certificate of as-

6. Burnet v. Harmel (1932), 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199; United States v. Pelzer (1941), 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913.

7. Mutual Fire Ins. Co. of Germantown v. United States (3rd Cir., 1944), 142 F.2d 344, 347, cert. den. 323 U.S. 729, 65 S.Ct. 65, 89 L.Ed. 585.

sociation do not refer to dividends or other method of returning any excess. We agree with the tax court that since the members have equitable ownership and elect the directors, it is sufficiently clear that declaration of dividends will return any significant excess to the members. The parties and the tax court have assumed that a provision of the insurance code in the article governing mutuals will prevent a dividend unless a $200,000 surplus is maintained.[8] Assuming that taxpayer could not pay a dividend without developing and maintaining a surplus of that size, we agree with the tax court that such degree of restriction on dividends is not significant for the present purpose.

The decision of the tax court is affirmed.

8. 73 S.H.A. § 666 prohibits payment of a dividend by a company subject to article III without maintaining a specified amount of surplus. 73 S.H.A. § 989 makes companies like taxpayer subject "to other applicable provisions of this Code."