**HOYLAKE INVESTMENTS LIMITED,
A Bermuda company limited by
shares, Plaintiff,**

**v.**

**Fletcher BELL, Kansas Commissioner
of Insurance, Defendant,**

**and**

**Farmers Group, Inc.; Farmers Insurance
Company, Inc.; Farmers Insurance Exchange; Truck Insurance Exchange;
and Fire Insurance Exchange, Intervenors.**

**Civ. A. No. 89–4152–s.**

United States District Court,
D. Kansas.

Sept. 18, 1989.

Arthur E. Palmer and Wayne T. Stratton, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan. and Robert L. Ring, Edwin G. Schallert and Thomas Carroll, Debevoise & Plimpton, New York City, for plaintiff.

Pamela F. Scott, Sp. Asst. Atty. Gen., Chief Atty., and Mike Broemmel, Kansas Ins. Dept., Topeka, Kan., Winton A. Winter, Jr., John W. Lungstrum and William J. Skepnek, Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan., William W. Sneed, Gehrt & Roberts, Chtd., Topeka, Kan., Stuart M. deHaaff, Frederick J. Brookwell and Leonard Venger, Bughalter, Nemer, Fields & Younger, Los Angeles, Cal., and Rory O. Millson, Cravath, Swaine & Moore, New York City, for defendant.

James A. Strain, Eric R. Moy, Peter J. Rusthoven and Janet R. Barbre, Barnes & Thornburg, Indianapolis, Ind., for proposed amici curiae The American Council of Life Ins. & The American Ins. Ass'n.

David B. Simmons, Nat'l Ass'n of Ins. Com'rs, Kansas City, Mo. amici curiae.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. On Friday, September 15, 1989, the court heard oral argument on plaintiff's motion. For the purposes of the pending motion, the court makes the following findings of fact.

### FINDINGS OF FACT

1. Plaintiff Hoylake Investments Limited ("Hoylake") is a Bermuda subsidiary of an English company. On July 11, 1989, Hoylake announced its tender offer of £13 billion ($\approx$ $21 billion) for all shares of B.A.T. Industries. This is the largest European tender offer to date.

2. B.A.T. Industries ("B.A.T.") is a British company and the multinational conglomerate successor of the British–American Tobacco Company. B.A.T. is involved in four major businesses: tobacco, paper, retailing, and finance. B.A.T. has over 145,000 shareholders. The tender offer, if accepted by B.A.T.'s shareholders, would result in an expected $4 billion premium to those shareholders.

3. Hoylake's attempt to takeover B.A.T. is governed by the United Kingdom's City Code on Takeovers and Mergers, since B.A.T.'s stock is traded on the London Stock Exchange. The City Code requires that tender offers become unconditional (i.e. Hoylake must receive all regulatory approval for the takeover) within eighty-one days of the offer's announcement. On the morning of September 15, 1989, however, the Takeover Panel (the body enforcing the City Code) allowed Hoylake an exemption from this time requirement and granted Hoylake time to get the state-required regulatory approvals of the acquisitions of the insurance companies involved in the B.A.T. takeover. If the Takeover Panel had not granted Hoylake the extension, then the tender offer would have lapsed if the defendant Insurance Commissioner had not approved the acquisition of Farmers Insurance Inc. by sometime in October, 1989. B.A.T. intends to appeal the Panel's ruling.

4. B.A.T. has a subsidiary, BATUS, which acquired Farmers Group, Inc. in December, 1988. Farmers Group, Inc. controls three insurance exchanges, which control Farmers Insurance, Inc. Farmers Insurance, Inc. is a Kansas Insurance company, incorporated in Kansas. Farmers In-

surance, Inc. accounts for less than one percent of B.A.T.'s overall revenue.

5. Defendant Kansas Commissioner of Insurance ("Insurance Commissoner" or "commissioner") is responsible for enforcing the Kansas Insurance Holding Companies Act ("Kansas Act"), K.S.A. §§ 40–3301 to –3311.

6. The Kansas Act requires the Insurance Commissioner to review and approve any acquisition of a domestic insurance company.[1] The purpose of act is protect the financial stability of domestic insurance companies and thus the policyholders. Insurance companies have been attractive takeover targets because they generally have large pools of liquid assets. The Kansas Act protects policyholders from parties that may acquire an insurance company for the purpose of looting the liquid assets. The law also prevents insurance operations form being turned over to inexperienced management.[2]

7. On July 28, 1989, Hoylake brought this suit seeking declaratory and injunctive relief against the Kansas Commissioner of Insurance. Hoylake contends that the Kansas Act is unconstitutional and the commissioner should be enjoined from enforcing the act and conducting the investigation and hearing required by the act.

## PRELIMINARY INJUNCTION

To prevail of its motion for preliminary injunctive relief, plaintiff must show that (1) a substantial likelihood exists that it will succeed on the merits; (2) it will suffer irreparable harm if the requested injunction is not granted; (3) this harm to the plaintiff will outweigh any harm to the opposing parties; and (4) the relief requested would not be adverse to the public interest. *Amoco Oil Co. v. Rainbow Snow, Inc.*, 809 F.2d 656, 666 (10th Cir.1987).

### 1. *Substantial Likelihood of Success on the Merits.*

Hoylake contends that the Kansas Act is unconstitutional and should not be enforced because it is an impermissible state interference with interstate commerce, it violates due process, and it violates the United States Constitution's reservation of foreign affairs to the federal government.

a. The Commerce Clause Challenge.

Defendants argue that the Kansas Act is protected from challenges based on the Commerce Clause because of the McCarran–Ferguson Act, 15 U.S.C. §§ 1012–1015. In Section 2(a) of the McCarran–Ferguson Act, the United States Congress expressly left the power to regulate the business of insurance to the states. 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation ... of such business.") In section 2(b), Congress stated that for a federal law to preempt a state's regulation of insurance, the federal law must specifically relate to the business of insurance.

The issue before the court is whether the Kansas Insurance Holding Companies act regulates the "business of insurance." If so, the Kansas Act is exempt from a Commerce Clause challenge. *See Western and Southern Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 653, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514

---

1. K.S.A. § 40–3304(d)(1) requires the Insurance Commissioner to approve the acquisition of a domestic insurance company unless the commissioner finds that the acquiring entity would not be able to satisfy the requirements for the issuance of a license to write lines of insurance, the acquisition would lessen competition in insurance in the state, the acquisition would jeopardize the financial stability of the insurance company, the acquiring party's plans regarding the liquidation of assets would be unfair to the policyholders, or the acquiring party lacks sufficient experience to operate an insurance company.

A party may request judicial review of the Insurance Commissioner's action in the state district court within thirty days of the receipt of the notice of approval or disapproval. K.S.A. §§ 77–611 to –613.

2. For a background on the purpose for the creation of state insurance holding companies acts, see Note, *State Insurance Takeover Acts: A Constitutional Analysis After Edgar v. MITE*, 59 *Ind. L.J.* 255 (1984).

(1981). Judge Rogers of this District has said, in dictum, that the Kansas Act regulates the "business of insurance" and thus is within the McCarran–Ferguson Act's protection. *See Professional Investors Life Ins. Co. v. Roussel,* 528 F.Supp. 391, 402 (D.Kan.1981).

Plaintiff contends that the definition set out in *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), applies and that the Kansas Act does not involve the transfer or distribution of risk. The court agrees with defendants that the *Pireno* definition applies only when Section 2(b) of the McCarran–Ferguson Act is at issue, and the effect of a federal statute is involved. In the absence of a federal statute, it is clear that "the McCarran–Ferguson Act freed the States to continue to regulate and tax the business of insurance companies, in spite of the Commerce Clause." *Group Life and Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 218–19 n. 18, 99 S.Ct. 1067, 1077 n. 18, 59 L.Ed.2d 261 (1979).

■ The court finds that the Kansas Act definitely relates to the business of insurance. *See S.E.C. v. National Securities, Inc.,* 393 U.S. 453, 462, 89 S.Ct. 564, 569–570, 21 L.Ed.2d 668 (1969) (The Supreme Court found a section of a statute to relate to the business of insurance. The section authorized the State Director of Insurance, as licensor of insurers within the state, to review mergers of insurance companies to determine if the mergers were in the interest of policyholders.)

The Kansas Act allows the Insurance Commissioner an opportunity to review the acquiring party's financial stability, experience in the insurance business, and ability to protect the interest of policyholders.[3] This is similar to the review and approval that the domestic insurer initially was subjected to before it received a license to write insurance. *See* Affidavit of Ron Todd. at ¶ 12. Pursuant to the Kansas Act, the commissioner reviews a proposed change in the entity controlling a domestic insurer. This review clearly relates to the transfer and distribution of risks, for the review assures policyholders that the underwriting capability of the domestic insurer is not threatened by the change in control. Also, this review and evaluation by the commissioner involves the relationship between the insurance company and policyholders. For these reasons, the court has no difficulty finding that the Kansas Act regulates the business of insurance. Therefore, the Kansas Act is rendered invulnerable to a Commerce Clause attack.

■ Even if the McCarran–Ferguson Act did not protect the Kansas Act from a Commerce Clause attack, the state's interests in the Kansas Act outweighs the indirect effect the act has on interstate commerce, and thus is not an unconstitutional interference of interstate commerce. The court finds the present situation quite analogous the situation in the recent case of *CTS Corp. v. Dynamics Corp. of Amer.,* 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). In that case, the United States Supreme Court upheld an Indiana takeover statute as constitutional under the Commerce Clause. The Indiana statute placed certain obstacles on a party making a hostile tender offer for shares of a corporation chartered in Indiana, having a certain number of shareholders who were residents of Indiana. In finding the act constitutional under the Commerce Clause, the Court stated that the act did not "prohibit any entity—resident or nonresident—from offering to purchase, or from purchasing, shares in Indiana corporations, or from attempting thereby to gain control. It only provides regulatory procedures designed for the better protection of the corporations' shareholders." *Id.* at 93, 107 S.Ct. at 1652.

Like the Indiana statute in *CTS Corp.,* the Kansas Act imposes no greater burden on a non-Kansan offeror than on a similarly situated Kansas offeror. Both would be subjected to the Insurance Commissioner's review if they attempted to acquire a Kansas insurance company. *See id.* at 88, 107 S.Ct. at 1649. Also, the Kansas Act regulates only the acquisition of domestic insur-

---

**3.** *See* Finding of Fact number 6, above.

ance companies. Insurance is a subject that expressly has been left to the states to regulate under the McCarran–Ferguson Act. *See id.* at 88–89, 107 S.Ct. at 1649–1650. Moreover, the state of Kansas has a legitimate and significant interest in evaluating a party acquiring Farmers Insurance, Inc.[4] Not only is Farmers Insurance, Inc. a domestic insurance company, but a substantial number of its policyholders are Kansas residents.[5] *See id.* at 93, 107 S.Ct. at 1652. For these reasons, the court finds that the Kansas Act, even if not granted the protection of the McCarran–Ferguson Act, does not violate the Commerce Clause.

Plaintiff relies heavily on the Supreme Court's recent decision in *Healy v. The Beer Institute, Inc.,* — U.S. —, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989). First, we agree with Judge Bryan of the Western District of Washington, who, in ruling on Hoylake's case in Washington, said that the facts in *Healy* are so different that it is not particularly instructive to the present matter. *See* Transcript of Court's Oral Decision in *Hoylake v. Marquart, et al.,* No. C89–387TB (W.D.Wash. September 8, 1989), at p. 7.[6] *Healy* stands for the proposition that a state may not regulate "commerce that takes place wholly outside of the State's borders...." *Healy,* — U.S. —, 109 S.Ct. at 2499, 105 L.Ed.2d at 288 (quoting *Edgar v. MITE Corp.,* 457 U.S. 624, 642–43, 102 S.Ct. 2629, 2640–41, 73 L.Ed.2d 269 (1982)). The Kansas Act regulates domestic insurers and entities that own Kansas insurance companies. Thus, the act cannot be characterized as one regulating commerce "wholly outside the state's borders."

All in all, the court finds that the Kansas Act withstands a constitutional challenge based on the Commerce Clause.

### b. Due Process Clause Challenge.

■ Plaintiff argues that the Kansas Act is invalid under the Due Process Clause because it places restrictions on out-of-state securities transactions. State insurance regulations are not subject to due process attack "merely because the affected business transactions are carried on outside the state." *Travelers Health Assoc. v. Virginia,* 339 U.S. 643, 650, 70 S.Ct. 927, 931, 94 L.Ed. 1154 (1950) (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 320–21, 63 S.Ct. 602, 606–07, 87 L.Ed. 777 (1943)). The state must have significant contacts creating state interests so that the application of the state's law to the transaction is neither arbitrary nor fundamentally unfair. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981). The court finds no due process problem with the Kansas Act. Without doubt, the state of Kansas has significant interests in who controls a domestic insurance company, which writes insurance policies pursuant to a licence issued by the state.

### c. Encroachment on the Federal Government's Responsibility for Foreign Affairs.

■ Plaintiff argues that the Kansas Act, as applied here, is an impermissible encroachment on the powers reserved to the federal government under the Foreign Affairs Clauses of the United States Constitution. The court finds that Kansas is

---

**4.** Plaintiff attempts to characterize the statute as regulating a tender offer wholly outside the territory of Kansas. However, the financial control of a Kansas domestic insurance company is at stake in the transaction. To say Kansas has no real interest in the transaction or that Kansas is reaching beyond its territorial power would be to ignore the obvious interest Kansas has in one of its insurance companies. Although the tender offer was made by a Bermuda company in an attempt to acquire a British company, the British company happens to own and control a Kansas insurance company, in which the state of Kansas has significant interests.

**5.** In 1988, Farmers Insurance, Inc was the third largest writer of automobile insurance policies in Kansas, the fourth largest writer of homeowners policies and property and casualty policies.

**6.** *Healy* involved the constitutionality of Connecticut's beer price affirmation statute, which had the effect of controlling prices and commercial activity in neighboring states. *Healy,* — U.S. at —, 109 S.Ct. at 2500, 105 L.Ed.2d at 289–90.

not trying to express any foreign policy or to encroach on the laws of affairs with foreign governments. The state is simply reviewing the transfer of control of a domestic insurance company, which is located within the borders of the state and which is licensed by the state to write insurance.

■ For the above stated reasons, the court finds that plaintiff has failed to show a likelihood of success on the merits of its claims that the Kansas Act is unconstitutional. Therefore the court will deny plaintiff's request for a preliminary injunction.

Even if plaintiff had been able to show a substantial likelihood of success on the merits, the court would still be inclined to deny the injunctive relief, because the public interest dictates against the issuance of a preliminary injunction in this case. The policyholders of Farmers Insurance, Inc. and the state of Kansas would be greatly harmed if the Insurance Commissioner were enjoined from conducting his investigation as required by the Kansas Act. The policyholders would lack assurance that the ultimate holder of the insurance company will be capable of covering claims or that the company will be in financially stable hands. This is particularly true in the present case, since Hoylake, if successful in its takeover attempt, plans to sell B.A.T.'s holdings in Farmers Group, Inc. to another party. This harm to the public interest far outweighs any financial harm that Hoylake or the shareholders of B.A.T. may incur due to the delay or failure of the takeover.

IT IS BY THIS COURT THEREFORE ORDERED that plaintiff's motion for a preliminary injunction against the defendant Insurance Commissioner is denied.