**HOYLAKE INVESTMENTS LIMITED, a Bermuda corporation, Plaintiff,**

v.

**John E. WASHBURN, Director, Illinois Department of Insurance, Defendant.**

**No. 89 C 5822.**

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1989.

---

6. The parties are free, however, to move for an injunction similar to that sought in

*Waco–Porter.*

Joel J. Sprayregen, Nicholas H. Diacou,
Lawrence A. Berman, Clifford E. Yuknis,

**44**

Shefsky & Froelich, Ltd., Chicago, Ill., for plaintiff.

Nick J. DiGiovanni, William J. Kelty, James R. Dwyer, Michael P. Comiskey, Lord, Bissell & Brook, Chicago, Ill., for amicus curiae.

Thomas A. Ioppolo, Christine H. Rosso, Ill. Atty. Gen., Chicago, Ill., for defendant.

NORDBERG, District Judge.

## MEMORANDUM OPINION AND ORDER

Before the court are plaintiff's motion for preliminary injunction and defendant's motion to dismiss. Plaintiff Hoylake Investments seeks to enjoin the Director of the Illinois Department of Insurance from enforcing the Illinois Insurance Holding Company Systems Act. Defendant Director moves the court to abstain from exercising jurisdiction over plaintiff's suit.

After a full hearing on the motions, the court reviewed the written pleadings, exhibits, and memoranda of the parties and amicus curiae. The court conducted independent research, considering all of the law and evidence presented. The court has sought to draw reasonable inferences from the evidence and evaluate the applicable constitutional and statutory provisions, legal authorities and principles. Therefrom, the court makes the following findings of fact and conclusions of law:

### Facts

The facts are uncontested. Hoylake Investments Limited ("Hoylake") is a Bermuda subsidiary of an English company. On July 11, 1989, Hoylake announced the largest tender offer in Europe to date, for the shares of B.A.T. Industries. B.A.T. is a multinational conglomerate, incorporated in England, with over 145,000 shareholders. B.A.T. engages in four major business activities: tobacco, paper, retailing, and financial services.

B.A.T. Industries operates in the United States through a wholly owned subsidiary, BATUS, a Delaware corporation with its principal place of business in Kentucky. BATUS owns Farmers Group, Inc., which controls three insurance exchanges. The exchanges own several property and casualty insurers, among them Illinois Farmers Insurance Company ("Illinois Farmers")—an Illinois-based insurance company incorporated in Illinois. While Illinois Farmers accounts for only a small percentage of B.A.T.'s total revenue, the company ranked among the six largest home and four largest automobile insurers in Illinois in 1988.

Defendant Director of the Illinois Department of Insurance ("Director") is responsible for enforcing the Illinois Insurance Holding Company Systems Act, Ill. Rev.Stat. ch. 73, §§ 743.1—743.28. The Act requires the Director to approve any change in control of a domestic insurance company.[1] At present, B.A.T. controls Illinois Farmers through intermediate corporate entities. Because Hoylake would assume control of Illinois Farmers upon acquiring B.A.T., the Act obligates the Director to review the proposed acquisition.

On July 12, 1989, Hoylake filed a Form A with the Illinois Department of Insurance to initiate the Director's review process, as required by the Act. Hoylake attached a letter asking the Director to find the company exempt from the approval procedure. On September 11, 1989, the Director denied Hoylake's request for exemption; three days later, the Director informed Hoylake that hearings would commence on October 6, 1989, to determine whether Hoylake's proposed tender offer may proceed.

Meanwhile, Hoylake confronted tight scheduling requirements in England. Hoylake's takeover attempt is governed by the United Kingdom's City Code on Takeovers

---

1. Under the Act, the Director must disapprove any proposed acquisition of control unless the acquirer demonstrates that (a) it can satisfy the requirements for issuing a license to write lines of insurance; (b) the acquisition would not substantially lessen competition in insurance in Illinois; (c) the acquirer's financial condition would not jeopardize the financial stability of the domestic insurer; (d) the acquiring party's plans to liquidate the insurer are fair to policyholders, and (e) the acquirer's managers are sufficiently experienced to operate an insurance company. Ill.Rev.Stat. ch. 73, sec. 743.8.

and Mergers, since B.A.T.'s shares are traded on the London Stock Exchange. The City Code requires a tender offer to become unconditional within 81 days of its announcement. Under this timetable, Hoylake would have to obtain approval from the Illinois Director of Insurance by October 28, 1989, or withdraw its offer.

On September 15, 1989, however, London's Panel on Takeovers and Mergers (responsible for administering the City Code) granted Hoylake an extension: the company may take whatever time is necessary to obtain regulatory approval in the United States and then, within 21 days of such approval, renew its tender offer for B.A.T.'s shares. On September 29, 1989, the Appeal Committee of the Takeover Panel affirmed the Panel's ruling.

The extension notwithstanding, Hoylake asks the court to enjoin the Director of the Illinois Department of Insurance from proceeding any further under the Illinois Insurance Holding Company Systems Act. Hoylake contends that the Act is unconstitutional as applied, and that its enforcement threatens Hoylake with irreparable injury. The Director moves the court to abstain from deciding Hoylake's claims.

## MOTION FOR PRELIMINARY INJUNCTION

To obtain a preliminary injunction, Hoylake must prove the following: (1) Hoylake has no adequate remedy at law; (2) it will suffer irreparable harm if the preliminary injunction is not issued; (3) the irreparable harm that Hoylake would suffer if the injunction were denied outweighs the irreparable harm that would befall the Director if the injunction were granted; (4) Hoylake has a reasonable likelihood of prevailing on the merits; and (5) the injunction will not harm the public interest. *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir. 1988).

### Likelihood of success on the merits

Hoylake's challenge rests on three theories: first, that the Illinois Act violates the Commerce Clause; second, that it offends the Due Process Clause; and third, that it impermissibly encroaches on the Federal Government's dominion over foreign affairs. None of these arguments can withstand analysis.

### 1. Commerce Clause

Article I, Section 8 of the United States Constitution provides that "The Congress shall have Power ... To Regulate Commerce ... among the several States." U.S. Const., Art. I, § 8, cl. 3. The Commerce Clause has long been read implicitly to restrict the states from interfering with interstate commerce. *See, e.g., Western & Southern Life Insurance Company v. State Board of Equalization*, 451 U.S. 648, 652, 101 S.Ct. 2070, 2074, 68 L.Ed.2d 514 (1981). Nevertheless, Congress may bestow upon the states "an ability to restrict the flow of interstate commerce that they would not otherwise enjoy." *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44, 100 S.Ct. 2009, 2020, 64 L.Ed.2d 702 (1980).

Congress did precisely that with the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. Section 1012(a) of the Act provides, "the business of insurance, and every person who engages therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." As the Supreme Court recently made clear, "Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran–Ferguson Act." *Western & Southern Life Insurance Company, supra*, 451 U.S. at 653, 101 S.Ct. at 2075.

Hoylake does not deny that McCarran–Ferguson insulates the business of insurance from Commerce Clause attack. Rather, Hoylake argues that the Illinois Holding Company Systems Act, as applied to Hoylake, does not regulate the "business of insurance." In the Director's view, the Illinois Act does exactly that.

The court agrees with the Director. Directly controlling here is *Securities and Exchange Commission v. National Securities*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In *National Securi-*

*ties*, the Supreme Court reviewed an Arizona statute requiring the State Director of Insurance to approve mergers involving domestic insurance companies. One provision of the statute "focused . . . attention on stockholder protection; it [was] not attempting to secure the interests of those purchasing insurance policies." Regulation of this sort, concluded the Court, "is not within the scope of the McCarran–Ferguson Act." *National Securities*, 393 U.S. at 460, 89 S.Ct. at 569.

Another part of the Arizona law required the Director to ensure that the proposed merger would not "substantially reduce the security of and service to be rendered to policyholders." *Ibid*, at 462, 89 S.Ct. at 569. "This section of the statute," the Court found, "clearly relates to the 'business of insurance.' " *Ibid*. The Supreme Court so held because "it is clear where the focus [of the McCarran–Ferguson Act] was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.' " *Ibid*, at 460, 89 S.Ct. at 568–69.

The Illinois Act is unquestionably aimed at protecting policyholders. It derives from the Model Insurance Holding Company Systems Act, which has been enacted in some form by 47 states. The Model Act was designed to ensure the solvency of insurance companies and to protect the interest of policyholders. The Illinois Act expressly serves the same objective: "The purpose of this Section [providing for pre-acquisition approval by the Director] is to afford to the Director the opportunity to review acquisitions in order to determine whether or not the acquisition would be adverse to the interests of the existing and future policyholders of the company." Ill. Rev.Stat. ch. 73, § 743.4.

Moreover, the Director notes well the interrelationship between the Act and Illinois' licensing process. The Illinois Insurance Code requires the Director to review an insurer's operating plan and financial condition before issuing a license. "This licensing scheme would be entirely subverted," observes the Director, "if the control of a licensed insurer could change hands before the acquiring parties had been reviewed under the standards of the Act." Washburn Aff., p. 6. This result "would . . . frustrate the substantial interest of the State . . . to protect the interests of the policyholders of the domestic insurer . . ." *Ibid*.

Like the District Court for the District of Kansas, this court finds the state's insurance holding company statute to be geared toward protecting policyholders from unscrupulous or inexperienced management. *See Hoylake Investments Limited v. Fletcher Bell*, 723 F.Supp. 576 (Dist. Kan.1989). It is precisely the sort of legislation shielded from Commerce Clause attack by the McCarran–Ferguson Act. *See National Securities, supra*.

Hoylake maintains that *Union Labor Life Insurance Company v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), defines "business of insurance" in a way that excludes application of the Illinois Act to Hoylake's tender offer. But *Pireno* addresses Section 1012(b) of McCarran–Ferguson, which concerns the effect of federal statutes regulating the insurance industry; the court agrees with the District Courts in Kansas and Texas that *Pireno*'s definition applies only when another federal act is at issue. *See Hoylake Investments Limited v. Fletcher Bell, supra; Hoylake Investments Limited v. A.W. Pogue*, A–89–CA–704.[2]

---

**2.** The Supreme Court in *Group Life & Health Insurance v. Royal Drug Company*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), expressly distinguished § 1012(b) from "the *primary* purpose of the McCarran–Ferguson Act," embodied in § 1012(a), which is "to assure that the States are free to regulate insurance companies without fear of Commerce Clause attack." *Royal Drug*, 440 U.S. at 218, n. 18, 99 S.Ct. at 1077, n.

18 (emphasis original). "The question in the present case"—which involved § 1012(b)—"is one under the quite different *secondary* purpose of the McCarran–Ferguson Act—to give insurance companies only a limited exception from the antitrust laws." *Ibid* (emphasis original). It was in light of this "limited exception" that the Court fashioned its definition of "business of insurance."

Even if *Pireno* were applicable, the Illinois Act would satisfy its definition of "business of insurance." The Act regulates the acquisition of insurers, an activity that plainly "has the effect of transferring or spreading a policyholder's risk"; such acquisitions represent "an integral part of the policy relationship between the insurer and the insured," since the change in control of an insurer may affect the quality and stability of its policies; and finally, though not as clearly, the Act is "limited to entities within the insurance industry" because it concerns itself solely with the acquisition of domestic insurance companies. *See Pireno*, 458 U.S. at 129, 102 S.Ct. at 3009.

Lastly, Hoylake claims that *FTC v. Travelers Health Association*, 362 U.S. 293, 80 S.Ct. 717, 4 L.Ed.2d 724 (1960), removes the Illinois Act from McCarran–Ferguson's reach. According to Hoylake, *FTC* stands for the proposition that McCarran–Ferguson does not authorize a state to regulate extraterritorial activities. *FTC*, however, involved legislation of a wholly different type than the Illinois Act. In that case, a Nebraska statute provided that "No person ... resident of this state shall engage in unfair methods of competition ... in the conduct of the business of insurance *in any other state*" (emphasis added). *FTC*, 362 U.S. at 296, 80 S.Ct. at 719.

The Supreme Court agreed with the District judge that Nebraska's regulation of practices " 'in any other state' is not 'the kind of regulation by state law that Congress had in mind' in enacting the McCarran–Ferguson Act." *Ibid*, at 297, 80 S.Ct. at 719. The statute was "not the protective legislation of the States whose citizens are the targets of the ... practices in question"; rather, it was the state's "attempted regulation of its *domiciliary's* extraterritorial activities" (emphasis added). *Ibid.*

Here, by contrast, the Illinois Act does not purport to regulate the extraterritorial activities of its insurance companies. The Act focuses narrowly on the management of domestic insurers, subjecting changes in control to the Director's evaluation, all for the benefit of Illinois policyholders. It is indeed "protective legislation of the State whose citizens are the targets of the ... practices in question," unlike the Nebraska statute in *FTC*. The Illinois Act falls squarely within the protective reach of the McCarran–Ferguson Act.

■ Even if McCarran–Ferguson did not shield the Illinois Act from Commerce Clause attack, Illinois would not be interfering unconstitutionally with interstate commerce. This conclusion follows from the Supreme Court's analysis in *CTS Corporation v. Dynamics Corporation of America*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). *CTS* involved an Indiana statute prohibiting acquirers from securing voting rights in Indiana targets unless target management or unaffiliated shareholders approve. The Supreme Court tested the statute against the "firmly established" principle of "a State's authority to regulate domestic corporations." *CTS*, 481 U.S. at 89, 107 S.Ct. at 1649.

Indiana acted well within that authority, according to the Court. The statute did not resemble the "principal objects of dormant Commerce Clause scrutiny," which are "statutes that discriminate against interstate commerce"; to the contrary, it had "the same effects on tender offers whether or not the offeror is a domiciliary or resident of Indiana." *Ibid*, at 87, 107 S.Ct. at 1648. Neither did the law subject corporate activities to inconsistent regulations, another important Commerce Clause concern: "So long as each State regulates voting rights only in the corporations it has created, each corporation will be subject to the law of only one State." *Ibid.*

Like the Indiana statute, the Illinois Act avoids these constitutional pitfalls. The Act applies equally to resident and non-resident tender offerors, and so " 'visits its effects equally upon both interstate and local business.' " *Ibid* (quoting *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 36–37, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980)). Likewise, the Act poses no threat of inconsistent regulations, since it regulates only the internal affairs of insurers incorporated here. In passing the Act, Illinois, no less than Indiana, has acted

within its authority over local corporate matters.

*Amanda Acquisition Corporation v. Universal Foods Corporation*, 877 F.2d 496 (7th Cir.1989), lends further weight to this conclusion. In that case, the Seventh Circuit confronted a Wisconsin law preventing mergers from taking place within three years of acquisition unless the Wisconsin target's board of directors approves. The District Court in *Amanda* considered the law so severe that it " 'effectively eliminates hostile leveraged buyouts.' " *Amanda*, 877 F.2d at 499. The Circuit Court expressed its dissatisfaction as well, remarking that "[if] our views of the wisdom of state law mattered, Wisconsin's takeover statute would not survive." *Ibid*, at 500.

Nevertheless, the court upheld the law for the same reasons advanced by the Supreme Court in *CTS*. Like the statute there, and the Illinois Act here, Wisconsin's law neither discriminated against interstate commerce nor raised the specter of inconsistent regulations. Furthermore, the Seventh Circuit considered and rejected a third theory of Commerce Clause violation in *Amanda*, which Hoylake has pressed upon this court. The theory, as the court described it, is the "broader, all-weather, be-reasonable vision of the Constitution." *Ibid*, at 505.

Originating with the Supreme Court's decision in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), this approach requires the court to balance the local interests served by a statute against the burden it imposes on interstate commerce. The *Amanda* court, noting the absence of any such inquiry in *CTS*, questioned its validity and rejected its applicability. *See Amanda*, 877 F.2d at 505. "At all events," the court concluded, "*CTS* did not even cite [*Pike*] when dealing with a statute that regulated only the affairs of a firm incorporated in the state." *Ibid*. When a statute of this nature is at issue—as it is with the Illinois Act—"[s]tates may regulate corporate transactions as they choose without having to demonstrate under an unfocused balancing test that the benefits are 'enough' to justify the consequences." *Ibid*, at 507.[3]

Finally, Hoylake cites *Healy v. Beer Institute, Inc.*, —— U.S. ——, 109 S.Ct. 2491, 105 L.Ed.2d 275, for the proposition that the Commerce Clause precludes application of a state law to commerce occurring wholly outside the state's borders. This court agrees with the District judge in Kansas that Hoylake's proposed tender offer presents a very different scenario. As that court recognized, "to say Kansas has no real interest in the transaction or that Kansas is reaching beyond its territorial power would be to ignore the obvious interest Kansas has in one of its insurance companies." *Hoylake Investments Limited v. Fletcher Bell, supra*, n. 4. The same is clearly true for Illinois.[4] With or without the protection of the McCarran–Ferguson

---

**3.** Even if the *Pike* balancing test were applied, the Illinois Act would still pass constitutional muster. This court cannot say that Illinois' interest in preventing unscrupulous acquirers from raping local insurance companies is "outweighed" by the limitations imposed on interstate acquisitions by the Act.

**4.** The Illinois Act differs in this respect from the statute invalidated in *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), cited by Hoylake to support its position. *MITE* involved the Illinois Business Takeover Act, which required a would-be acquirer to register its tender offer with the Secretary of State. The Supreme Court held the Act unconstitutional. But as the *CTS* Court observed in distinguishing the Indiana act before it, the *MITE* statute applied to out-of-state as well as in-state corporations; it regulated corporations with small num-

bers of Illinois shareholders; its application did not affect a substantial number of Illinois residents. *See CTS*, 481 U.S. at 93, 107 S.Ct. at 1651–52. The Illinois Insurance Holding Company Systems Act, like the Indiana act, is of a different character altogether.

> The *Amanda* court explained the difference well:
> Illinois' law, held invalid in *MITE*, regulated sales of stock elsewhere. Illinois tried to tell a Texas owner of stock in a Delaware corporation that he could not sell to a buyer in California. By contrast, Wisconsin's law, like the Indiana statute sustained by *CTS*, regulates the internal affairs of firms incorporated there.

*Amanda*, 877 F.2d at 506. The Illinois Act, too, regulates only the internal affairs of its domestic insurance companies.

Act, the Illinois Insurance Holding Company Systems Act does not violate the Commerce Clause of the United States Constitution.

### 2. The Due Process Clause

Hoylake contends that the Illinois Act violates the Due Process Clause of the Constitution. This argument ignores the Supreme Court's admonition that insurance regulations do not violate due process " 'merely because the affected business transactions are carried on outside the state.' " *Travelers Health Association v. Virginia,* 339 U.S. 643, 650, 70 S.Ct. 927, 931, 94 L.Ed. 1154 (1950) (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 320–21, 63 S.Ct. 602, 607, 87 L.Ed. 777 (1943)).

■ To satisfy due process, a state must have sufficient contacts creating an interest in the transaction such that application of the state law is neither arbitrary nor fundamentally unfair. *Allstate Insurance Company v. Hague,* 449 U.S. 302, 312–313, 101 S.Ct. 633, 639–640, 66 L.Ed.2d 521 (1980). As already noted, Illinois has a substantial interest in protecting Illinois policyholders from inefficient or unscrupulous management of domestic insurance companies. The Illinois Act embodies this interest. It does not violate the Due Process Clause.

### 3. Encroachment on Foreign Affairs

■ Finally, Hoylake argues that Illinois unconstitutionally encroaches on the Federal Government's province over foreign affairs. This claim is without merit. Unlike the Oregon law in *Zschernig v. Miller,* 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1967), upon which Hoylake relies, the Illinois Act does not "involve the ... courts in an evaluation, either expressed or implied, of the administration of foreign law, the credibility of foreign diplomatic statements,

and the policies of foreign governments." *Zschernig,* 389 U.S. at 442, 88 S.Ct. at 671 (Stewart, concurring). Illinois has made no attempt to interfere with foreign relations, nor does the Act have such an effect.

Because the Illinois Act violates neither the Commerce Clause, nor the Due Process Clause, nor the Foreign Affairs Clauses of the Constitution, the court finds that Hoylake has failed to show a likelihood of success on the merits.

### Balance of hardships

■ In the Seventh Circuit, motions for preliminary injunction are evaluated "in accordance with a 'sliding scale' approach: the more the balance of irrevocable harms inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." *Kowalski v. Chicago Tribune Co.,* 854 F.2d 168, 170 (7th Cir.1988). Theoretically, Hoylake might still be entitled to injunctive relief if it would suffer far greater damage without an injunction than would the Director if enjoined.[5]

Hoylake cannot make such a showing. While it may be true that "time is of the essence" in tender offers, as Hoylake asserts, that fact alone does not amount to irreparable injury. No longer constrained by London's City Code to complete its offer unconditionally by late October, the company faces only the customary market pressures. This court will not grant the "extraordinary" remedy of injunctive relief under these circumstances. *See* Wright & Miller, *Federal Rules of Civil Procedure,* ch. 9, § 2948 (1973).

Moreover, the interests of the Director and the policyholders he represents must be weighed in the balance.[6] As the District Court for the District of Kansas observed,

The policyholders of Farmers Insurance, Inc. and the state ... would be greatly

---

5. Given how unlikely Hoylake is to succeed on the merits (see above), and the intrusiveness of enjoining, in federal court, the Illinois Director of Insurance from performing his statutory obligations, it does not seem possible that any balance of hardships could justify a preliminary injunction in this case.

6. The interest of policyholders might more accurately be considered the public interest, rather than the Director's. Either way, that interest is sufficiently strong to militate against granting injunctive relief to Hoylake.

harmed if the Insurance Commissioner were enjoined from conducting his investigation as required by the ... Act. The policyholders would lack assurance that the ultimate holder of the insurance company will be capable of covering claims or that the company will be in financially stable hands.

*Hoylake Investments Limited v. Fletcher Bell, supra,* pp. 580–81.

Plaintiff Hoylake Investments Limited has not satisfied the requirements for obtaining injunctive relief. The plaintiff's motion for preliminary injunction in connection with its tender offer for the shares of B.A.T. Industries p.l.c. is therefore DENIED.

## MOTION TO DISMISS

Defendant Director of Insurance has filed a motion to dismiss Hoylake's action, based on three abstention doctrines: *Younger, Burford,* and *Pullman.* The latter two bear little relevance to the present dispute. A court should abstain under *Burford* when it confronts complex issues normally decided by specialized state agencies (*Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)); the only issue presented by Hoylake is whether the Illinois Act violates the United States Constitution. This is a matter squarely within the expertise of federal courts. *Pullman* abstention, "a great time waster ... is justified only when there are large benefits, as when a statute or ordinance can be saved by a narrowing construction." *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 568 (7th Cir. 1986). Hoylake challenges the Act itself, not any particular interpretation. *Pullman* abstention would yield no benefits.

The case for *Younger* abstention, on grounds of equity and comity, is stronger; nonetheless, there are countervailing considerations that militate against abstaining. Foremost among them is the delay occasioned by referring the case to Illinois' administrative and judicial processes. According to Hoylake, the delay brought about by enforcement of the Illinois Act has already injured the company, and will

do so irreparably unless the Director is enjoined. Although the court thinks less of this argument than does Hoylake (see above), Hoylake is entitled to have all facts construed in its favor on defendant's motion to dismiss.

■ From Hoylake's perspective, then, this case comes to the court as an emergency situation. Under such circumstances, a court need not abstain from exercising jurisdiction. *See, e.g., Pike v. Bruce Church, supra,* 397 U.S. at 140, n. 3, 90 S.Ct. at 846, n. 3; *Anderson v. Babb,* 632 F.2d 300, 306, n. 3 (4th Cir.1980). With abstention remaining "the exception, not the rule," and the federal courts' obligation "to adjudicate claims within their jurisdiction ... virtually unflagging," this court will not abdicate its responsibility to hear Hoylake's claims. *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* — U.S. —, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Defendant's motion to dismiss is accordingly DENIED.